618

UNITED STATES

v.

**Senior Airman Bradley J. CAMERON,
United States Air Force.**

**ACM S29577.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 12 May 1998.

Decided 22 Nov. 2000.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Ray T. Blank, Jr., Major Michael C. Barrett, and Captain Natasha V. Wrobel.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo and Lieutenant Colonel Ronald A. Rodgers.

Before YOUNG, Chief Judge, BURD, and ROBERTS, Appellate Military Judges.

OPINION OF THE COURT

BURD, Judge:

On 12 May 1998, the appellant was tried by special court-martial composed of a mili-

tary judge sitting alone at Vandenberg Air Force Base (AFB), California. Consistent with his pleas, he was found guilty of three specifications of wrongful use of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to E–3. While not required by the pretrial agreement in the case, the convening authority reduced the confinement by 3 days to enable the appellant to be home for his son's birthday. The appellant asserts three errors occurred during the sentencing phase of his court-martial. We will address each issue individually. We affirm.

I. Admissibility of Appellant's Statement

After the results from a urinalysis showed the appellant used marijuana, investigators from the Air Force Office of Special Investigations obtained a written sworn statement from him. In the statement, the appellant adamantly denied knowingly using illegal drugs. During the sentencing phase of the trial, the military judge admitted the statement over defense objection. The judge found the statement admissible as facts and circumstances of the marijuana use alleged in Specification 1 of the Charge and as evidence in aggravation under Rule for Courts Martial (R.C.M.) 1001(b)(4).

■ The appellant claims the military judge committed prejudicial error by admitting his pretrial statement into evidence during the sentencing part of the trial. The standard of review on questions regarding the admissibility of evidence is whether the trial judge clearly abused his broad discretion. *United States v. Johnson,* 46 M.J. 8 (1997). While we conclude the military judge abused his discretion in admitting the appellant's statement, the error was harmless.

The appellant's statement was evidence of uncharged misconduct. In light of the appellant's guilty plea to using marijuana, his denial of that use in a sworn written statement to investigators constituted either a false swearing under Article 134, UCMJ, 10 U.S.C. § 934, or a false official document under Article 107, UCMJ, 10 U.S.C. § 907.

For evidence to be admissible as "aggravating circumstances," the evidence must be of circumstances "directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4); *United States v. Manns,* 54 M.J. 164 (2000). Such circumstances may be uncharged misconduct. *United States v. Wingart,* 27 M.J. 128, 135–36 (C.M.A.1988). Regardless of the character of the aggravating circumstances, such evidence must pass the separate balancing test under Mil.R.Evid. 403 to be admissible. *Manns,* 54 M.J. at 166.

Several cases interpreting R.C.M. 1001(b)(4) focus on the question of the meaning of the words "directly relating to or resulting from the offenses." For a good listing of the cases interpreting this standard, see *United States v. Hollingsworth,* 44 M.J. 688, 690–92 (C.G.Ct.Crim.App.1996); *United States v. Green,* 44 M.J. 631, 640–41 (C.G.Ct.Crim.App.1996) (O'Hara, J., concurring in part and in the result) and cases cited therein. The standard is higher than "mere relevance." *United States v. Rust,* 41 M.J. 472, 478 (1995).

■ We have previously held that false statements about an offense made sometime after the offense are not admissible as evidence in aggravation. *United States v. Clabon,* 33 M.J. 904, 905–06 (A.F.C.M.R.1991); *United States v. Caro,* 20 M.J. 770, 771–72 (A.F.C.M.R.1985). However, the impact false statements have on investigative activities may be a proper aggravating factor if factually developed. *Caro,* 20 M.J. at 771. Additionally, dicta from *Wingart* indicates that, at least at one point in time, our superior court was receptive to the view that a false official statement about an offense may be admissible as a matter in aggravation. Chief Judge Everett, in providing examples of uncharged misconduct admissible as evidence in aggravation, said the aggravating circumstance "may follow the offense of which the accused has been convicted—e.g., a false official statement concealing an earlier theft of government property." *Wingart,* 27 M.J. at 135.

We read our decisions in *Clabon* and *Caro* to mean that false statements about offenses do not directly relate to those offenses. Logically, such a position may appear to be counter-intuitive. Would the fact that a per-

son suspected of an offense lied under oath or in an official statement about that offense be an important consideration for a sentencing authority? Would the fact that a person chose to tell the truth in the same situation be important? While we are convinced the answer could be yes to both questions, depending upon the particular circumstances of the case, we conclude that uncharged false statements about charged offenses, as a general rule, are not proper evidence in aggravation. R.C.M. 1001(b)(4). Consideration of sentencing fundamentals reveals the rationale for this conclusion.

■ A long held principle of sentencing has been that "proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Mamaluy*, 27 C.M.R. 176, 181, 1959 WL 3587 (C.M.A. 1959) (cited in *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982)). Consideration of this principle is the key to understanding and evaluating the probative value of sentencing evidence.

■ Applying this principle to the question of whether the appellant's false denial was directly related to or resulted from his use of marijuana, how would that denial affect the nature and seriousness of his use of marijuana? It would not, because his false official statement (or false swearing) did not alter the characteristics of his previous illegal use of marijuana. Therefore, his false statement did not directly relate to or result from his use of marijuana. Logic would also require the conclusion that such false statement was not a fact or circumstance of the marijuana use.

However, as we earlier alluded that the appellant's false denial might well be important information for the sentencing authority, we view such evidence as probative on the second sentencing criterion articulated in *Mamaluy*, i.e., the character of the offender. An accused's decision to either lie or tell the truth when confronted by an official inquiry may provide the sentencing authority with

valuable insight into the character and rehabilitation potential of the accused.[1] When an accused confesses, this is generally a matter in mitigation the defense rarely fails to bring to the court's attention. *See* R.C.M. 1001(c)(1)(B).

But, as the rules of evidence make clear, when character is relevant, proof may only be made by testimony as to reputation or by testimony in the form of an opinion; relevant specific instances of conduct are relegated to cross-examination. Mil.R.Evid. 405. This rule applies in sentencing and limits the use of specific instances of conduct to impeachment. *United States v. White*, 36 M.J. 306 (C.M.A.1993). The same general restrictions apply to evidence of rehabilitation potential. *See* R.C.M. 1001(b)(5).

Thus, the conclusion is unavoidable that, in this case, the prosecution was premature in offering the appellant's written sworn false denial of a marijuana use to which he pled guilty because the false denial was a specific instance of conduct. While that false denial was probative on the issue of the appellant's character and rehabilitation potential, because it was not a fact or circumstance nor an aggravating circumstance of the offense, it was inadmissible in the prosecution's sentencing case-in-chief. *See* Mil.R.Evid. 405; R.C.M. 1001(b)(5).

■ We conclude from the evidence offered by the defense on sentencing that the appellant placed his character and rehabilitation potential into evidence. Therefore, his false denial of his use of marijuana would have been admissible in rebuttal. *See* Mil. R.Evid. 405; R.C.M. 1001(b)(5). Evidence of the appellant's false denial of his use of marijuana would have satisfied a Mil.R.Evid. 403 balancing test as rebuttal evidence. Additionally, because this was a judge alone trial, we are convinced the sentence imposed would have been the same with or without the statement in evidence. As a result, we find the military judge's erroneous admission of the appellant's statement to be harmless error. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

---

1. Indeed, our superior court has spoken of the importance of truthfulness to the effectiveness of our armed forces. *See United States v. Solis*, 46 M.J. 31, 34 (1997). *See also United States v. Swift*, 53 M.J. 439, 451 (2000).

## II. Prejudicial Impact of NJP Record

■ The appellant claims he was prejudiced by the introduction of a record of nonjudicial punishment (NJP) for the same offense alleged in Specification 1 of the Charge. This claim has no merit.

During the inquiry into the providence of the appellant's guilty plea, the appellant volunteered that he had accepted NJP, Article 15, UCMJ, 10 U.S.C. § 815, for the marijuana use alleged in Specification 1 of the Charge. The appellant then explained that the pressure he felt from this situation led to his marijuana use alleged in Specification 2 of the Charge. The trial counsel later offered the record of NJP as part of the prosecution evidence on sentencing. The NJP record listed two offenses: wrongful use of marijuana and violation of a regulation by wrongfully allowing a Government American Express Card account to become delinquent. The punishment consisted of a one-grade reduction and a reprimand. The NJP record was admitted into evidence without objection. During argument on sentencing, the trial counsel argued that further reduction was appropriate and that the appellant had lost one stripe for the first use. In response, the defense counsel argued that the circumstances showed that the appellant had already been punished for the first marijuana use by the loss of his non-commissioned officer (NCO) status. None of the trial participants discussed the issue of specific credit against the sentence for the prior NJP.

The appellant's argument that the military judge was prohibited from considering the NJP record is based on *United States v. Pierce*, 27 M.J. 367, 369 (C.M.A.1989) ("the [NJP for the charged offense] may not be used for *any* purpose at trial.") (emphasis in original). The appellant's assignment of errors was filed before the United States Court of Appeals for the Armed Forces (CAAF) issued its clarification of *Pierce* in *United States v. Gammons*, 51 M.J. 169 (1999).

The CAAF provides in *Gammons* that while *Pierce* supports the gatekeeper role of the accused for a prior NJP for a charged offense, where an accused allows the NJP to become an issue in the sentencing proceeding, Art. 15(f), UCMJ, will not be transformed from a shield to a sword. *Gammons*, 51 M.J. at 180. This is precisely what the appellant's claim on appeal attempts to accomplish.

It is obvious from the record of trial that there was no debate about the best course of action regarding the NJP—the defense elected to bring the NJP to the attention of the military judge as a matter in mitigation. *See* R.C.M. 1001(c)(1)(B). The appellant was the first to introduce the issue of the NJP into the trial by referencing it during his guilty plea discussion with the military judge. Consistent with this tactic, no objection was made by the defense when the NJP record was offered into evidence. The appellant later stated in his unsworn statement that he had already been punished by a loss of a stripe. Then, during argument on sentence, the trial defense counsel argued that the appellant had already been punished for one of the marijuana uses by loss of his NCO status.

Moreover, the NJP record evidenced an uncharged offense in addition to the use of marijuana alleged in Specification 1 of the Charge. While both the appellant and his trial defense counsel made only subtle and indirect reference to this additional offense when addressing the appellant's prior punishment, this was a matter of emphasis rather than deception because everyone understood the military judge had the NJP record. Placing the NJP record before the military judge ensured he understood what the prior punishment was and that it was for two offenses, including one to which the appellant pled guilty. This use of the NJP record to ensure the court was not misled was proper. *Gammons*.

## III. Credit for Prior Punishment

The appellant, relying on *Pierce*, claims he was prejudiced by the failure of either the military judge or the convening authority to apply credit for the NJP imposed for the offense charged in Specification 1 of the Charge. The appellant asks that his reduction from E–4 to E–3 be disapproved. We conclude the military judge did apply credit for the NJP imposed.

■ A military judge is presumed to know the law and apply it correctly. *United States v. Robbins*, 52 M.J. 455, 457 (2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 177, 148 L.Ed.2d 122 (2000). While the military judge did not state on the record any credit awarded for prior punishment, this was not error because the trial was held before such a requirement existed. *See Gammons*. The treatment of the appellant's prior NJP at trial was consistent with Art. 15(f), UCMJ, and *Pierce*.[2] We note that, in addition to all of the references made to the prior NJP by both parties during the trial, in post-trial submissions, the appellant's trial defense counsel made no request for credit against the sentence for the prior NJP and the appellant said he felt like he had been treated "very fairly" and felt "lucky to only be reduced in rank to [E–3]." Under all the circumstances of this case, we see no reason "to either (1) ascertain from the judge an explanation of what his consideration of the [NJP] implied; or (2) adjust appellant's sentence." *Pierce*, 27 M.J. at 370. We find that the appellant was not twice punished. Art. 15(f), UCMJ.

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

2. The present rule is that "[i]n a judge-alone trial, if the accused offers the record of a prior NJP for the purposes of evidence in mitigation during sentencing, the military judge will state on the record the specific credit awarded for the prior punishment." *Gammons*, 51 M.J. at 184.