UNITED STATES

v.

Brent Julian DRIVER, Aviation Ord-
nanceman Airman Apprentice
(E–2), U.S. Navy.

NMCM 200100320.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 23 Aug. 2000.

Decided 22 Nov. 2002.

LCDR Dale O. Harris, JAGC, USNR, Ap-
pellate Defense Counsel.

CDR George F. Reilly, JAGC, USN, Ap-
pellate Defense Counsel.

LT Frank L. Gatto, JAGC, USNR, Appel-
late Government Counsel.

Before LEO, Chief Judge, RITTER, and
FINNIE, Appellate Military Judges.

RITTER, Judge:

A military judge sitting as a general court-
martial convicted the appellant, in accor-
dance with his pleas, of conspiracy to commit
arson and arson, in violations of Articles 81
and 126, Uniform Code of Military Justice, 10
U.S.C. §§ 881 and 926. The adjudged sen-
tence consisted of a bad-conduct discharge,
confinement for 5 months, and reduction to
pay grade E–1. The convening authority
approved the sentence as adjudged.

After carefully considering the record of trial, the appellant's two assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

In early January 2000, the appellant walked in on a conversation between Aviation Ordnanceman Airman Apprentice (AOAA) Mims and Aviation Ordnanceman Third Class (AO3) Hester, two fellow members of the USS THEODORE ROOSEVELT (CVN 71) Weapons Department, as they were discussing what to do with an automobile. The appellant quickly surmised from their discussion that they were referring to a stolen car. In fact, they were referring to AO3 Hester's car, which Hester wanted to report stolen and then use the insurance proceeds to buy a more reliable vehicle. A few days later, on or about 17 January 2000, AOAA Mims gave the keys to the car to the appellant and asked him and Gunner's Mate Third Class (GM3) Poree to get rid of the car, which they agreed to do. That evening, they drove the car from the Norfolk Naval Station parking area to a parking lot off base and poured gasoline inside the car. The appellant ignited the car with a cigarette, thereby destroying the car and receiving burns to his face and hands in the process.

In the course of an investigation conducted by the Naval Criminal Investigative Service (NCIS) into this and a similar incident, Special Agent (SA) Budd questioned the appellant about his role in the arson of AO3 Hester's vehicle. Upon advisement of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b), the appellant waived his rights and denied any knowledge of or involvement in the car's destruction, and provided a false explanation for the burns on his face.

At trial, the appellant pled guilty to conspiracy with GM3 Poree to set fire to the car, and to the arson itself. In accordance with his pretrial agreement, the appellant pled not guilty to the specification of making a false official statement, under Article 107, UCMJ,

10 U.S.C. § 907, concerning his statement to SA Budd. Consistent with the pretrial agreement, the Government elected not to go forward on this charge and the military judge entered a finding of not guilty.

In its case in aggravation, the Government offered testimony from AOAA Mims, concerning four or five discussions he had with the appellant and others concerning AO3 Hester's automobile. Over the trial defense counsel's objection, and after the military judge conducted a balancing test on the record under Military Rule of Evidence 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), AOAA Mims explained that in one of those conversations, he, the appellant, and GM3 Poree briefly discussed the possibility of burning other automobiles for crewmembers who desired to obtain their insurance proceeds. AOAA Mims testified that GM3 Poree specifically suggested that their next job could be to burn a car belonging to another Weapons Department member named Morgan.

The Government then called SA Budd, who testified to the appellant's false statements in the course of the NCIS investigation. The military judge overruled defense counsel's objection, after conducting a Mil. R. Evid. 403 balancing test, finding that the testimony directly related to or resulted from the offenses to which appellant had pled guilty. While explaining how the appellant's false statement complicated the investigation, SA Budd provided background information on the scope of the investigation, including the fact that another car found destroyed by fire belonged to a man named Morgan. In response to the military judge's question, SA Budd clearly indicated that, although the appellant was closely associated with the persons who burned Morgan's car, NCIS had no information that linked the appellant with the actual destruction of the vehicle.

On appeal, the appellant argues that the military judge erred in admitting improper aggravation evidence when, over the objection of defense counsel, he admitted: (1) evidence concerning the destruction of multiple vehicles, where appellant had been charged with conspiracy and arson involving only one; and (2) evidence of appellant's false

statement to NCIS relating to the charged offenses, after he had been charged and found not guilty of making the same false statement. We disagree, and find that the military judge properly admitted the challenged evidence.

## Standard of Review

The standard of review on appeal for the admission or exclusion of evidence on sentencing is whether the "'judge clearly abused his discretion.'" *United States v. Clemente*, 50 M.J. 36, 37 (1999)(quoting *United States v. Rust*, 41 M.J. 472, 478 (1995) and *United States v. Zakaria*, 38 M.J. 280, 283 (C.M.A.1993)). RULE FOR COURTS-MARTIAL 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), sets forth the rule as to what evidence the prosecution can present in aggravation during the presentencing phase of courts-martial, and provides that "[t]he trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Whether evidence is "directly relat[ed] to or results from the offenses," and is thus admissible in aggravation, calls for considered judgment by the military judge, and such judgment will not lightly be overturned. *United States v. Wilson*, 47 M.J. 152, 155 (1997). Evidence qualifying for admission under R.C.M. 1001(b)(4) must also pass the test of Mil. R. Evid. 403. *Rust*, 41 M.J. at 478. "The appellant has the burden of going forward with conclusive argument that the judge abused his discretion" in applying the Mil. R. Evid. 403 balancing test. *United States v. Mukes*, 18 M.J. 358, 359 (C.M.A. 1984).

## Evidence of a Broader Conspiracy

■ The appellant argues that AOAA Mims' testimony concerning a conversation involving the destruction of both AO3 Hester's vehicle and that of another crewmember named Morgan improperly revealed misconduct that did not directly relate to the charges for which the appellant was sentenced. He points out that misconduct may "directly relate to or result from" charged offenses if it is part of "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs

within the military community." *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990); *accord United States v. Nourse*, 55 M.J. 229, 231 (2001). Other acts by an accused that are part of a continuing course of conduct are admissible to show the true impact of crimes upon the victim. *Nourse*, 55 M.J. at 231. Since a broader conspiracy would involve vehicles with different owners and, presumably, different insurance companies would be defrauded into paying for the destroyed vehicles, the appellant argues that AOAA Mims' testimony about a broader conspiracy encompassing Morgan's vehicle does not relate to the full impact on the victim of the appellant's offense, and should not have been admitted.

Assuming *arguendo* that evidence of the appellant's actual involvement in the destruction of another vehicle might constitute inadmissible uncharged misconduct, AOAA Mims' testimony did not implicate the appellant in the destruction of a second vehicle. We view AOAA Mims' testimony of the discussion in which he, the appellant, and GM3 Poree *considered* destroying another car only as evidence of the conspirators' intent in forming the agreement for which the appellant was charged, and not as uncharged misconduct. The idea of destroying other cars besides AO3 Hester's, and specifically Morgan's car, arose in the course of one of the four or five discussions AOAA Mims had with the appellant and others concerning AO3 Hester's car, which the appellant and GM3 Poree conspired to burn. The discussion involved both the appellant and the charged co-conspirator, focused primarily on the plan to destroy AO3 Hester's car, and thus served as at least part of the basis for the agreement underlying the charged offense of conspiracy to commit arson. Since this discussion was logically relevant for assessing the appellant's state of mind and culpability in entering into the charged conspiracy, the suggestion to destroy Morgan's car clearly meets R.C.M. 1001(b)(4)'s test for aggravation evidence in that it "directly related to" the appellant's intent in conspiring to destroy AO3 Hester's car.

Even if AOAA Mim's testimony could have led one to suppose that the appellant may

have actually agreed to a larger conspiracy than the one charged, it does not follow that it was error to admit it in aggravation. Circumstances surrounding the commission of charged offenses that have not been previously introduced before the findings may be introduced at the presentencing stage, regardless of whether the accused pled guilty or not guilty, so long as they meet the requirements of R.C.M. 1001(b)(4). *See United States v. Vickers,* 13 M.J. 403, 406 (C.M.A. 1982); *United States v. Wingart,* 27 M.J. 128, 134–35 (C.M.A.1988). "[U]ncharged misconduct may be admitted because it . . . accompan[ied] the offense of which the accused has been convicted—*e.g.,* an uncharged aggravated assault, robbery, or sodomy incident to a rape." *Wingart,* 27 M.J. at 135.

We conclude that AOAA Mims' testimony concerning the appellant's conspiratorial discussions—including the suggestion of a broader conspiracy—was directly related to the charged offense of conspiracy. Inasmuch as the military judge, upon timely objection by the trial defense counsel, conducted the proper balancing test under Mil. R. Evid. 403, we find no abuse of discretion in his decision to admit the testimony as aggravating evidence under R.C.M. 1001(b)(4).

### Evidence of a False Official Statement

We turn next to the contention that the trial judge erred in allowing evidence of the appellant's false official statements to SA Budd concerning the arson of AO3 Hester's car. Here the objection is based on two grounds: first, that the alleged misconduct does not directly relate to or result from the offenses of which the appellant was found guilty, within the meaning of R.C.M. 1001(b)(4); and second, that the same evidence served as the basis for a charge of which the military judge had acquitted the appellant, after the Government declined to offer evidence on it.

During the sentencing hearing, the trial counsel questioned SA Budd concerning his interrogation of the appellant, in an effort to show that the NCIS expended additional time and effort investigating the arson case, because agents were misdirected by the appellant's false official statement. The trial defense counsel objected to the testimony as evidence of uncharged misconduct. The military judge overruled the defense objection, finding that evidence of a false official statement concerning the charged offenses did relate to and result from those offenses, and conducted a Mil. R. Evid. 403 balancing test on the record. Although SA Budd testified that the appellant's statements "set [the investigation] back 4 or 5 days," Record at 58, on cross-examination he was unable to articulate any specific reasons to support his contention that the false statement prejudiced the investigation.

As the appellant points out in his brief, the argument that a false official statement concerning prior charged offenses does not "directly relate to or result from" those offenses finds some support in decisions of the Air Force Court of Criminal Appeals (AFCCA). The AFCCA has found that, as a general rule, evidence of an appellant's false statement concerning a charged offense is not admissible in aggravation. *See United States v. Cameron,* 54 M.J. 618, 619 (A.F.Ct. Crim.App.2000), *United States v. Clabon,* 33 M.J. 904, 906 (A.F.C.M.R.1991). The AFCCA's stated rationale is based upon a consideration of sentencing fundamentals, *Cameron,* 54 M.J. at 620; but the result is that the court finds that "false statements about offenses do not directly relate to those offenses" within the meaning and purpose of R.C.M. 1001(b)(4). *Id.* at 619. However, our superior Court has specifically stated otherwise. In *Wingart,* the Court, in describing the type of uncharged misconduct that would be admissible for sentencing under R.C.M. 1001(b)(4)'s requirement that it "directly relate[s] to or result[s] from the charged offenses," said:

"The uncharged misconduct may be admitted because it is preparatory to the crime of which the accused has been convicted—*e.g.,* an uncharged housebreaking that occurred prior to a larceny or rape. It may accompany the offense of which the accused has been convicted—*e.g.,* an uncharged aggravated assault, robbery, or sodomy incident to a rape. It may follow the offense of which the accused has been convicted—*e.g., a false official statement*

*concealing an earlier theft of government property."*

*Wingart,* 27 M.J. at 135 (emphasis added).

A false official statement concerning an earlier charged offense logically both relates to, and results from, the offense. It "relates to" the offense in that the circumstances surrounding the offense provide the subject matter for any equivocation by the accused. It "results from" the offense whenever the offense serves as part of the basis for seeking to question the accused. Except for situations in which the questioning authorities have no reason to suspect the accused of having been involved in the prior offense, it also logically follows that a false official statement "directly" relates to and results from the offense, within the meaning of R.C.M. 1001(b)(4). Our superior Court's statement to this effect in *Wingart* might be said to confirm this logic and, in any case, adds the authoritative interpretation of the Rule.

We now turn to the second prong of the appellant's argument, which is that he had in fact been acquitted of making a false official statement only minutes before the trial counsel offered the same conduct as aggravation evidence. Although not cited by either party on appeal, our own case of *United States v. Howe,* 37 M.J. 1062 (N.M.C.M.R.1993), seems to support the appellant's position. In *Howe,* after finding the accused not guilty of drug use charges, the military judge allowed trial counsel to offer parts of an uncorroborated confession as to the same instances of drug use during its case in aggravation on other charges. After ruling that the Government's failure to corroborate the confession on the merits rendered it inadmissible for any purpose, this court went on to say:

"There is another reason why this evidence should not have been considered during sentencing, one that is more fundamental than the corroboration requirement for confessions ... the drug related offenses were charged misconduct, and the appellant was found not guilty. Once he was acquitted, he could not be sentenced for those offenses. Under the circumstances of this case, enhancing the appellant's punishment on the basis of his con-

fession to those offenses is tantamount to punishing him for offenses of which he was found not guilty."

*Howe,* 37 M.J. at 1065–66.

A recent case from our superior Court calls this reasoning into question. In *United States v. Griggs,* 51 M.J. 418 (1999), the Court of Appeals for the Armed Forces (CAAF) ruled admissible, on findings, evidence of prior acts that had been the subject of an acquittal. Citing the United States Supreme Court case of *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the CAAF stated:

We are satisfied that the military judge did not abuse his discretion. The fact of an acquittal does not necessarily bar the evidence of prior acts. "[R]elevant and probative evidence that is otherwise admissible under the Rules of Evidence [is not rendered inadmissible] simply because it relates to alleged criminal conduct for which a defendant has been acquitted."

*Griggs,* 51 M.J. at 419–20 (citations omitted).

The CAAF in *Griggs* emphasized the need for great sensitivity in making the determination to admit evidence of prior acts that have been the subject of an acquittal. In finding no abuse of discretion by the military judge in that case, the Court relied on the military judge's determination that there was sufficient evidence that the prior acts occurred, his having properly balanced the probative value of the evidence against its prejudicial effect, and the members in that case having been made aware of the acquittal both during the presentation of evidence and later in the judge's instructions.

■ If acts that have been the subject of an acquittal may be admissible on findings, we see no reason why such evidence, when relevant under R.C.M. 1001 and otherwise admissible under the Military Rules of Evidence, should not be admissible at the sentencing hearing. Clearly, the CAAF's admonition to exercise great sensitivity in deciding whether to admit such evidence would apply equally in the sentencing hearing. However, the mere fact that the accused was acquitted of a crime does not necessarily mean the underlying act did not occur, or that such an

act should not be considered even though it "directly relates to or results from" a charged offense within the meaning of R.C.M. 1001(b)(4). As long as there is sufficient evidence that the act occurred, the judge applies the proper balancing test under Mil. R. Evid. 403, and the sentencing authority is fully aware of the fact of the acquittal, we see no reason to bar the court from considering relevant and probative evidence during the sentencing hearing solely on the ground that the accused was acquitted of a crime based on the act. We therefore overrule our previous decision in *Howe* to the extent that the reasoning in that case conflicts with *Griggs* and our decision herein.

We emphasize that our holding relies on military judges to carefully apply the factors utilized by the CAAF in *Griggs,* when deciding whether to admit evidence in aggravation that may have been the basis for charge of which the accused was acquitted. For example, if the acquittal can only be understood to mean that the accused did not commit the underlying act, the prior act should not be admitted. To do otherwise would violate the double jeopardy concerns that the Supreme Court addressed in *Dowling, supra,* and disregard the *Griggs* requirement for sufficient evidence that the prior act occurred. However, if as in this case, the fact of the acquittal does not rule out the factual basis for the underlying act, it should be available to the sentencing authority as one of many considerations in adjudging an appropriate sentence for the offense and the offender, so long as it meets the standards of R.C.M. 1001, Mil. R. Evid. 403, and other applicable rules of evidence.

■ We find that the military judge in this case did not abuse his discretion in admitting SA Budd's testimony concerning the appellant's false statement. The military judge was fully aware of the acquittal, as he himself had acquitted the appellant after the Government declined to go forward on the charge during findings. Upon the defense counsel's timely objection, the judge conducted a Mil. R. Evid. 403 balancing test to ensure that the probative value of the evidence outweighed its prejudicial effect. He specifically determined that the evidence "directly related to or resulted from" the charged offenses. Record at 57. Furthermore, we find that SA Budd's unrebutted testimony constituted sufficient evidence that the underlying act occurred, and that there is no indication that the judge gave the evidence undue weight.

Even if the military judge erred in admitting SA Budd's testimony of the false official statement, there was no prejudice to the appellant. The point that trial counsel sought to make in offering the evidence— that the appellant's false statement prejudiced the NCIS investigation—was effectively undermined by the defense counsel's effective cross-examination of SA Budd, which demonstrated that the NCIS efforts suffered little if any frustration or delay as a result of the appellant's statement. Record at 60–61. Moreover, the sentence adjudged was relatively light, considering the serious nature of the charges of which the appellant was convicted. In fact, the sentence was well within the jurisdictional maximum of a special court-martial, even though the case was being heard at a general court-martial. Finally, the case was before a military judge alone, and we presume that the military judge gave the evidence no more weight than it was entitled. *United States v. Prevatte,* 40 M.J. 396, 398 (C.M.A.1994).

### Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below.

Chief Judge LEO and Senior Judge FINNIE concur.