# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40329**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Devontaye T. HARDEN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 November 2023

————————————

*Military Judge*: Brett A. Landry.

*Sentence*: Sentence adjudged 20 April 2022 by GCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 25 July 2022: Dishonorable discharge, confinement for 16 months, reduction to E-1, and a reprimand.

*For Appellant*: Captain Thomas R. Govan, Jr., USAF.

*For Appellee*: Major Joshua M. Austin, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, MENDELSON, and DOUGLAS, *Appellate Military Judges*.

Judge MENDELSON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge DOUGLAS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MENDELSON, Judge:

In accordance with Appellant's pleas and pursuant to a plea agreement, a general court-martial comprised of a military judge sitting alone convicted Appellant of five specifications of abusive sexual contact in violation of Article

120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] The court-martial sentenced Appellant to a dishonorable discharge, 16 months of confinement, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence, but he did grant deferral of reduction in grade and forfeitures of pay and waived the latter.

Appellant personally raises two issues on appeal pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether trial counsel committed prosecutorial misconduct during the presentencing argument; and (2) whether Appellant's adjudged sentence was inappropriately severe. We have determined the findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.

## I. BACKGROUND

On five separate occasions between June 2021 and January 2022, Appellant suddenly slapped or grabbed the buttocks of five different unsuspecting females as he ran or walked past them. These offenses occurred off base at a local department store, a hiking trail, a park, and on base at Fairchild Air Force Base, Washington. All five victims were civilians who did not know Appellant, and one victim was a minor walking to school.

The first offense occurred on 9 June 2021, when Appellant slapped the buttocks of a woman as he passed her walking down an aisle at the department store. The victim reported the incident and local police questioned Appellant on the same day. At that time, Appellant told the police officer, "I've never done anything like this before, it's never going to happen again." However, he proceeded to slap or grab the buttocks of the remaining four victims between September 2021 and January 2022.

The second offense happened on 24 September 2021 on a local hiking trail. Appellant slapped a hiker on her buttocks, and then ran away.

The next offense occurred on 2 December 2021 while Appellant was jogging on base. While jogging past a military dependent, Appellant slapped her buttocks and continued jogging.

The fourth and fifth offenses both occurred on 20 January 2022, while Appellant jogged at a local park. As a teenage girl was walking to school,

---

[1] Unless otherwise specified, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the plea agreement, one specification of sexual abuse of a child and one specification of failure to go to appointed place of duty were withdrawn and dismissed with prejudice.

Appellant ran up behind her, reached under her long jacket and backpack, and grabbed her buttocks. Later that same morning while still at the park, Appellant grabbed another victim's buttocks as he jogged past her.

The following day, on 21 January 2022, local law enforcement conducted surveillance at the same local park. Officers pulled Appellant over for speeding and questioned him. At that time, Appellant lied to the police officer by denying he had been to the park the day prior.

On 26 January 2022, Appellant was interviewed by Air Force Office of Special Investigations (AFOSI) agents. During that interview, Appellant repeatedly lied by denying that he was at the park on 20 January 2022.[3] However, he did eventually confess to the two offenses at the park on 20 January 2022. When Appellant was then questioned about whether there were any other incidents, he initially denied any further incidents. However, when specifically confronted about the on-base incident on 2 December 2021, he eventually confessed to that offense as well.

Ultimately, charges were preferred and referred for Appellant's offenses, a plea agreement was negotiated, and Appellant pleaded guilty in accordance with the plea agreement to Specifications 1 through 4 of Charge I and Charge I (the incidents involving other adults), and to the Specification of the Additional Charge and the Additional Charge (the incident involving the minor), for slapping or grabbing the buttocks of each of the five victims.[4]

## II. DISCUSSION

### A. Presentencing Argument

Appellant contends trial counsel committed prosecutorial misconduct during presentencing arguments by arguing Appellant had low rehabilitative potential when no evidence of the lack of rehabilitative potential was presented

---

[3] The stipulation of fact, which the Appellant entered into, provides that "[d]uring this interview, [Appellant] lied, mislead [sic], and intentionally omitted, on numerous occasions, multiple facts to the detectives and agents." This conduct was not charged as a false official statement.

[4] We note that trial defense counsel entered an inartful plea on Appellant's behalf, stating the incorrect charge number for Specifications 2, 3, and 4 of Charge I; trial defense counsel further failed to enter a plea to Charge I and the Specification of the Additional Charge. The military judge immediately clarified that Appellant was pleading guilty to Specifications 1 through 4 of Charge I and guilty to Charge I; and guilty to the Additional Charge and its specification. This was consistent with the plea agreement and the stipulation of fact detailing the factual elements for Specifications 1 through 4 of Charge I, and the Specification of the Additional Charge. Appellant has not claimed prejudice, and we find none.

in presentencing proceedings under Rule for Courts-Martial (R.C.M.) 1001(b)(5), and by improperly linking rehabilitative potential to the severity and nature of the offenses. We are not persuaded and find no relief is warranted.

### 1. Additional Background

Appellant entered into a stipulation of fact, which was admitted into evidence during findings, detailing the factual circumstances surrounding the offenses to which he pleaded guilty. The stipulation of fact included details about Appellant's statement to local law enforcement on 9 June 2021, after the first offense, declaring "it's never going to happen again;" Appellant's questioning by local police on 21 January 2022, in which Appellant denied being at the park when the last two offenses occurred; and Appellant's interview with AFOSI on 26 January 2022, in which he initially denied the offenses.

During the presentencing proceedings, trial counsel did not present additional evidence of Appellant's rehabilitative potential under R.C.M 1001(b)(5). However, during the presentencing argument, trial counsel addressed the sentencing principle of rehabilitation, arguing Appellant initially lied to local law enforcement and AFOSI:

> Finally, the rehabilitative potential of [Appellant]. Now, a guilty plea may make it seem that [Appellant] has taken full accountability for his actions and he has and the Government is grateful for that. But what is important to look at is what the history was before he took accountability. [Appellant] lied to that first police officer that stopped to talk to him about the incident that happened in the [department store]. He said it would never happen again and that he understood the gravity of his actions and that he apologized to the victim. But then again, he did it four more times.
>
> [Appellant] also lied to the law enforcement officers when they pulled him over on 21 January 2022, asking him if he had been in [the] [p]ark on the 20th, and [Appellant] said, "[N]o, I wasn't there." And then [Appellant] lied again to AFOSI agents when they brought him in to ask him about the incidents that had been reported. Not until [Appellant] realized after hours of questioning and saying that he was at other places, when he realized that the agents already knew that he was in those places, did he finally confess.
>
> This is a person who has lied, who is not afraid to lie, and whose actions speak louder than his words. He needs time. He needs

time to rehabilitate so that this can never happen to another individual again. Thirty months of confinement is sufficient.

Trial defense counsel did not raise any objection to the sentencing argument. Trial defense counsel also addressed the need for rehabilitation in his sentencing argument:

So, we talk about confinement. Again, Defense is asking for seven months and a reduction to E-1. The minimum under the agreement is 80 days, seven months is more than twice that number. We also must take a look at the reasons for confinement. Part of that reason is for him to sit there and reflect on what he did and he has been doing that for three months so far. The other reason for confinement is for his rehabilitation. He is actively seeking help. He is likely going to go to Miramar where they offer a Sex Offense Education Course which lasts 10 weeks. He is willing to do that, he is going to take that seriously and that is his first step.

The plea agreement limited the term of confinement for each offense to at least 80 days but not more than 30 months, to run concurrently, with no other sentencing limitation. The military judge sentenced Appellant to a dishonorable discharge, 16 months of confinement, reduction to the grade of E-1, and a reprimand.

**2. Law**

In sentencing an accused, the sentencing authority considers, among other things, "the nature and circumstances of the offense and the history and characteristics of the accused." Article 56(c)(1)(A), UCMJ, 10 U.S.C. § 856(c)(1)(A); R.C.M. 1002(f)(1). The sentencing authority also considers the sentencing factors listed in Article 56(c)(1)(C), UCMJ, and R.C.M. 1002(f)(3), which include the need for the sentence to reflect the seriousness of the offense and to rehabilitate the accused. In applying the sentencing factors to the facts of a particular case, the sentencing authority may consider any evidence admitted during the findings and presentencing proceedings. R.C.M. 1002(g).

Whether argument is improper is a question of law. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). "The standard of review for an improper argument depends on the content of the argument and whether the defense counsel objected to the argument." *United States v. Erickson*, 63 M.J. 504, 509 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 221 (C.A.A.F. 2007). Where trial defense counsel has objected to the argument, we review de novo whether the statements were erroneous and materially prejudicial to the substantial rights of the appellant. *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). If trial defense counsel

failed to object to the argument at trial, we review for plain error. *Marsh*, 70 M.J. at 104. To establish plain error, the appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (citation and internal quotation marks omitted). Because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (internal quotation marks and citation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (internal quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted). When analyzing allegations of improper sentencing argument in a judge-alone forum, we presume a "military judge is able to distinguish between proper and improper sentencing arguments." *Erickson*, 65 M.J. at 225.

### 3. Analysis

Because there was no objection during trial counsel's argument, we analyze this issue under a plain error standard of review. After closely examining trial counsel's argument, we find Appellant has failed to establish error, let alone plain or obvious error.

Appellant contends that the argument relating to his rehabilitative potential was improper because evidence of his rehabilitative potential was not admitted during presentencing proceedings pursuant to R.C.M. 1001(b)(5). However, while the rule limits the type and presentation of evidence that may be offered as rehabilitative potential during presentencing, the rule does not limit the sentencing authority's consideration of the sentencing factors listed in R.C.M. 1002(f) in imposing a sentence, which include the need for the sentence to rehabilitate the accused. In applying these sentencing factors, the sentencing authority may consider evidence admitted during findings in addition to evidence admitted in presentencing under R.C.M. 1001; thus, consideration of rehabilitation is not limited to evidence admitted pursuant to R.C.M. 1001(b)(5)(C) in presentencing. *See* R.C.M. 1002(g).

The evidence trial counsel argued with respect to rehabilitation—Appellant's false declaration after the first offense that it would never happen again, and his initial lies when questioned by law enforcement—is contained within the stipulation of fact that Appellant entered into, and which was admitted

into evidence during the findings portion. In sentencing, trial counsel argued that Appellant's initial lack of accountability should be considered when weighing the need for the sentence to rehabilitate Appellant. "An accused's decision to either lie or tell the truth when confronted by an official inquiry may provide the sentencing authority with valuable insight into the character and rehabilitation potential of the accused." *United States v. Cameron*, 54 M.J. 618, 620 (A.F. Ct. Crim. App. 2000). Here, trial counsel properly engaged in fair commentary on stipulated facts admitted into evidence and relevant to Appellant's rehabilitation potential. Viewing the argument within the context of the entire court-martial, trial counsel fairly argued "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248.

To the extent trial counsel's argument linked the severity and nature of the offenses to the need for rehabilitation, as Appellant contends, we also find no error. Appellant reasons that because R.C.M. 1001(b)(5)(C) provides that the severity and nature of the offense may not serve as the principal basis for a witness's opinion on an accused's rehabilitative potential, presentencing argument linking the severity and nature of an offense to rehabilitative potential is improper. Appellant again conflates the limitations that R.C.M. 1001(b)(5) places on the type and presentation of evidence in presentencing proceedings, with the sentencing considerations listed in R.C.M. 1002(f), including the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need for the sentence to rehabilitate the accused. We find no error here where trial counsel commented on these matters when arguing for an appropriate sentence.

We note that in this context, with the military judge as the sentencing authority, we do not see a danger that Appellant was punished for lying to law enforcement. While trial counsel argued that Appellant lied repeatedly, that argument was made in the specific context of Appellant's initial lack of accountability for the offenses and the need for the sentence to rehabilitate Appellant. R.C.M. 1002(f)(3)(F). We are confident the military judge distinguished the argument and properly considered it only for purposes of the need for the sentence to rehabilitate Appellant. *See Erickson*, 65 M.J. at 225.

To conclude, we find Appellant failed to meet his burden to demonstrate any error, much less plain or obvious error. Because Appellant has failed to meet his burden with respect to the first two prongs of the plain error test, we need not test for material prejudice to a substantial right. *See Bungert*, 62 M.J. at 348 ("[F]ailure to establish any one of the prongs is fatal to a plain error claim.").

**B. Sentence Appropriateness**

Appellant argues that his "sentence, in particular the dishonorable discharge, is inappropriately severe." We again find no relief is warranted.

**1. Additional Background**

The maximum amount of punishment authorized by law for the crimes of which Appellant was convicted, not taking into account any limitations of the plea agreement, included a dishonorable discharge, 35 years of confinement, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The plea agreement limited the total term of confinement to at least 80 days but no more than 30 months, with no other sentence limitation. The military judge sentenced Appellant to a dishonorable discharge, confinement for 16 months, reduction to the grade of E-1, and a reprimand.

**2. Law**

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). Our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We "may affirm only . . . the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**3. Analysis**

Appellant received substantially less than the maximum sentence contemplated by his plea agreement, and by entering into this plea agreement, Appellant significantly reduced his confinement exposure compared to the authorized maximum confinement for the offenses of which he was convicted. Nonetheless, Appellant argues the sentence imposed by the military judge, particularly the dishonorable discharge, was inappropriately severe because Appellant admitted his wrongdoing, pleaded guilty, and apologized. Appellant further argues that the character letters submitted in presentencing demonstrate he "served with distinction" and had a history of volunteering. Moreover, he "faced obstacles during his childhood without a father and he disclosed in his unsworn statement that he even experienced a sexual assault." While we

acknowledge there were some mitigating circumstances, we conclude Appellant's adjudged sentence—to include a dishonorable discharge—was not inappropriately severe.

We have considered that Appellant pleaded guilty, that he expressed remorse before the military judge, that he apologized, that he told the military judge he was willing to receive treatment, and that he conceded at least seven months of confinement was appropriate. However, we have also considered that Appellant's pattern of attacking women in public as they went about their daily lives—which continued even after declaring after the first offense that it would never happen again—is an aggravating factor. Appellant's offenses directly impacted five different unsuspecting victims, including a victim who was a minor at the time. All five victims provided unsworn statements detailing the feelings of panic, anxiety, and helplessness that have plagued them since Appellant's attacks.

We have conducted a thorough review of Appellant's entire court-martial record. We considered Appellant himself, the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, we conclude that the sentence is not inappropriately severe, and we affirm the sentence adjudged and as entered by the military judge.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court