# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER AND HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 KYLE A. JUHL**
**United States Army, Appellant**

ARMY 20100836

Fort Bliss
Michael J. Hargis and David H. Robertson, Military Judges
Colonel Francis P. King, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain James P. Curtin, JA (on brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain Kenneth W. Borgnino, JA (on brief).

31 October 2012

------------------------------------
MEMORANDUM OPINION
------------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of desertion, wrongful use of 3,4-methylenedioxymeth-amphetamine (MDMA), two specifications of wrongful consumption of alcoholic beverages, and breaking restriction in violation of Articles 85, 112a, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 885, 912a, 934 (2006) [hereinafter UCMJ].[1] A panel of enlisted and officer members sentenced appellant to a bad-conduct discharge, confinement for sixty-six months, and forfeiture all pay and allowances. The convening authority approved a sentence that included a bad-conduct discharge, confinement for a period of forty-eight months, and forfeiture of all pay and allowances and credited appellant with 161 days of confinement against the sentence to confinement. This case is before us for review pursuant to Article

---

[1] A panel of enlisted and officer members acquitted appellant of aggravated sexual assault in violation of Article 120, UCMJ.

66, UCMJ. Appellant raises two assignments of error, both of which warrant discussion but no relief.

## FACTS

After appellant pled guilty to use of MDMA (ecstasy), underage drinking, breaking restriction, and desertion, he was tried and acquitted of one specification of aggravated sexual assault by a panel of enlisted and officer members. This same panel then heard evidence and arguments during the presentencing phase of the proceedings.

Assistant trial counsel's sentencing argument was, as accurately described by appellant's counsel, "convoluted and inarticulate." This argument included the following:

> Mr. President, members of the panel, your jobs [sic] now is to give Private Juhl an appropriate sentence. The government requests a sentence of [sic] bad-conduct discharge, total forfeitures, and two years of confinement. The government has three reasons why we are recommending this sentence. The first is the reformation of the accused, his rehab potential, the general deterrence [sic], and the preservation of good order and discipline here in our military. . . .When we talk about reformation potential, or rehab, we have to consider not the offenses of Private Juhl's [sic]—or what offenses he pled guilty for [sic], but also the **uncharged misconduct**. I'm going to make [sic] a [sic] detail of [sic] all **of his misconduct**.
>
> He first pled guilty to wrongful use of MDMA, that's commonly referred to as ecstasy .... He bought ecstasy, he knew it was an illegal drug, and he ingested it. He also pled guilty of [sic] breaking restriction. That was, basically, he broke the restriction told [sic] by his company commander .... He also pled guilty of an Article 15 [sic], that's --- you know that's desertion. He deserted from 2 March to 3 May 2010, and as you know, that is not an AWOL [sic], intent to remain away permanently [sic].
>
> . . . In the **uncharged misconduct**, he used cocaine . . . and he used marijuana . . . twice . . . . This evidence shows that Private Juhl lacks of [sic] impulse control. His coping mechanism is to retreat into drug and alcohol abuse. He doesn't confront his issues, he seems to run from it [sic]. He basically, he had a chance. He had the

> chance to soldier on and confront the charges, but he
> chose to start using drugs. He chose to leave his unit.
> And that's something that we as officers need to look at.
> Our job is to provide good order and discipline. . . .
>
> This is also a unique opportunity to send a message. Right
> now, he pled guilty for desertion and for UAs [sic]—for
> failing urinalyses. If you don't give him an appropriate
> sentence, we need to check what our soldiers would say
> after [sic] that. We don't want our soldiers thinking that
> they can get a light sentence if they go to a court-martial
> because of a UA [sic] or a desertion, and that's something,
> members of this court, you need to look at. **He doesn't
> get it—or he can't stand up and say "sorry" to the
> victim and—you also need—you need to consider that
> too, okay, as a positive factor, okay, but as a negative
> factor, we need to see that all this misconduct
> bring[sic] him to this, that's why we're here today,
> okay, because of all his misconduct, and he plead guilty
> for the majority of it, and it is your job to give him the
> appropriate sentence.**

When assistant trial counsel, Captain (CPT) GR, stated appellant "can't stand up and say 'sorry' to the victim," he was referring to appellant's unsworn statement made during the sentencing portion of the trial. Although appellant had been acquitted of sexually assaulting Private (PVT) EC, during his unsworn statement appellant apologized to PVT EC for how things turned out and expressed an interest in one day being friends again. In addition, although appellant had been acquitted of the sexual assault charge, CPT GR was referring to PVT EC when he used the term "victim." Appellant made no objection at trial to this argument.

The maximum punishment appellant faced was a dishonorable discharge, confinement for seven years and one month (eighty-five months), and total forfeiture of all pay and allowances. The panel sentenced appellant to a bad-conduct discharge, confinement for sixty-six months, and forfeiture of all pay and allowances.

In his post-trial clemency submission, appellant's trial defense counsel requested clemency based on the possible "spillover" effect the aggravated sexual assault charge had on the panel. In the addendum to the Staff Judge Advocate's (SJA) recommendation to the convening authority, the SJA stated he believed clemency was warranted in appellant's case. Without stating the reason for his recommendation, he recommended the sentence to confinement be reduced to forty-

eight months. The convening authority approved a sentence that included confinement for a period of only forty-eight months.

## LAW AND DISCUSSION

*Alleged improper presentencing argument*

Appellant's first assignment of error alleges:

> THE ASSISTANT TRIAL COUNSEL ARGUED IMPROPERLY DURING THE PRESENTENCING PHASE OF THE TRIAL BY REFERRING TO THE ALLEGED VICTIM OF A CHARGE THAT PREVIOUSLY RESULTED IN A FINDING OF NOT GUILTY AND BY REFERRING TO OTHER MISCONDUCT THAT DID NOT FORM THE BASIS FOR THE CONVICTION.

Improper argument is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). Because the defense counsel did not object to trial counsel's argument, we apply a plain error analysis. *Id.* Under a plain error analysis, appellant must prove "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)).

Captain GR's reference in his sentencing argument to a "victim" was error. In addition, to the extent CPT GR's meandering argument could be interpreted to imply he was encouraging the panel to sentence appellant based on offenses for which appellant had not been convicted at court-martial, that was also error. Assuming these errors were plain or obvious, we do not find these errors to have materially prejudiced appellant's substantial rights.

Captain GR's use of the term "victim" was clearly referring to PVT EC, the person who appellant was charged with, and ultimately acquitted of, sexually assaulting. Appellant, as part of his unsworn statement during presentencing, stated that: he was "sorry" for "the way things turned out" between appellant and Private EC; he did not "blame" Private EC for "how things turned out;" and he did not hold a grudge against Private EC.

Because appellant had been acquitted of the charge involving Private EC, referring to her as a victim was erroneous. However, CPT GR argued to the panel that appellant's apology to Private EC was a "positive factor." To the extent that CPT GR's error was limited to referring to Private EC as a "victim," instead of as "Private EC," we do not find this to be prejudicial error.

4

Appellant's counsel invites this court to first link CPT GR's reference to the "victim" with CPT GR's reference to appellant's "uncharged misconduct." Appellant's counsel then asks this court to conclude that CPT GR was referring to the aggravated sexual assault charge, of which appellant was charged and acquitted, when he used the term "uncharged misconduct." Finally, appellant's counsel posits CPT GR was asking the panel to consider the sexual assault charge when arriving at an appropriate sentence and that this argument was improper and materially prejudiced appellant.

We decline this invitation. Although CPT GR's argument was confusing, the only vague reference to the sexual assault charge is the erroneous use of the term "victim" in describing Private EC. In describing appellant's uncharged misconduct, CPT GR limited his discussion to the offenses that appeared on the Article 15, UCMJ charge sheet, namely cocaine and marijuana uses. We therefore do not find that CPT GR was referring to the aggravated sexual assault charge when he used the term "uncharged misconduct" and did not argue that appellant's sentence should be based on the rape charge.

In addition, CPT GR, when referencing appellant's uncharged misconduct, linked it to appellant's rehabilitation potential and did not argue that appellant needed to be punished for those offenses. The military judge gave the appropriate instruction to the panel on how this prior Article 15 and underlying misconduct could be properly used. Specifically, in instructing the panel that it was appropriate to consider the Article 15 and underlying misconduct as an aggravating matter, the military judge stated, "you should further consider the prior Article 15 for drug uses, but you cannot punish the accused for those offenses, as those have been handled in an Article 15 previously . . . ." We therefore do not find that appellant's substantial rights were materially prejudiced by CPT GR's erroneous use of the term "victim" or counsel's argument concerning uncharged misconduct.

Captain GR also stated during argument that appellant had "pled guilty for desertion and for UAs[2] —for failing urinalyses." This statement was not accurate for two reasons. First, appellant had pleaded guilty to wrongfully using MDMA, not to failing a urinalysis. Second, there was no evidence presented that the wrongful use of MDMA was detected by more than one urinalysis. Appellant's other wrongful uses of illegal drugs, which would have been detected, presumably, by one or more additional failed urinalyses, were handled pursuant to Article 15, UCMJ. To the

---

[2] Although we are not entirely clear if in using the term "UA" trial counsel was referring to: (1) the desertion charge, which could be characterized as an "Unauthorized Absence"; (2) the underage use of alcohol specifications; or (3) the wrongful use of MDMA specification via a failed urinalysis, we are assuming he was referencing the latter.

extent CPT GR's argument can be interpreted to mean appellant had pleaded guilty to wrongfully using controlled substances on more than one occasion, this was error.

However, CPT GR's misstatement, when placed in the context of his entire sentencing argument and in light of the military judge's instruction and the sentencing flyer, did not materially prejudice appellant's substantial rights.

Captain GR, previous to his misstatement concerning multiple failed drug tests, accurately stated appellant had pleaded guilty to wrongfully using MDMA. Captain GR also accurately stated appellant, as part of his "uncharged misconduct," had twice wrongfully used marijuana and once wrongfully used cocaine. In referencing uncharged misconduct, CPT GR limited its use to the impact it had on appellant's rehabilitation potential.

In addition, and in an accurate and clear manner, the military judge instructed the panel, "you must bear in mind that the accused is to be sentenced only for the offenses of which he has been found guilty" and "a single sentence shall be adjudged for all offenses of which the accused has been found guilty." The sentencing flyer used by the panel only reflected the offenses that appellant had pled to and of which he had been convicted.

We therefore conclude that CPT GR's misstatement concerning "UAs" and "urinalyses" did not materially prejudice appellant's substantial rights.

*Alleged inappropriate and disproportionate sentence*

Appellant's second assignment of error alleges:

> THE APPELLANT'S SENTENCE TO SIXTY-SIX MONTHS CONFINEMENT AND A BAD-CONDUCT DISCHARGE IS INAPPROPRIATELY AND DISPROPORTIONATELY SEVERE.

This court "may act only with respect to the findings and sentence as approved by the convening authority" and "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ.

This provision has been described "as a sweeping Congressional mandate to ensure a fair and just punishment for every accused" and "requires" members of the service courts to "independently determine, in every case within [their] limited Article 66, UCMJ, jurisdiction, the sentence appropriateness of each case [they] affirm." *United States v. Baier*, 60 M.J. 382 (C.A.A.F. 2005) (internal citations

6

omitted). When a service court is "exercising its power over sentence appropriateness generally, it may consider both adjudged and approved sentences." *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010).

Appellant's counsel argues the adjudged sentence does not fit the crimes for which appellant was convicted and "the only logical conclusion is that the panel sentenced [appellant] for the aggravated sexual assault of which he was acquitted." Appellee's counsel concedes the adjudged sentence was excessive, but further argues the approved sentence, that included reducing appellant's confinement from sixty-six months to forty-eight months, was appropriate.

Consistent with our discussion of appellant's first assignment of error, we do not find that the panel improperly sentenced appellant based on the aggravated sexual assault charge. Based on our own independent review of this case, we further find the approved sentence including a bad-conduct discharge, forty-eight months' confinement, and forfeiture of all pay and allowances is appropriate.

## CONCLUSION

On consideration of the record, and the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we find appellant's arguments to be without merit. We hold the findings of guilty[3] and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

JOANNE P. TETREAULT ELDRIDGE
Deputy Clerk of Court

---

[3] Appellant pleaded guilty and without objection to Specification 3 of Charge III, which did not expressly allege the terminal elements of breaking restriction in violation of Article 134, UCMJ. We have considered this case in light of *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F. 2012), and we find no prejudice to the substantial rights of appellant.