# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

## No. ACM S32655

_____

## UNITED STATES
*Appellee*

**v.**

## James E. LAWRENCE
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 14 September 2021

_____

*Military Judge:* James R. Dorman.

*Sentence:* Sentence adjudged on 24 February 2020 by SpCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Sentence entered by military judge on 15 April 2020: Bad-conduct discharge, confinement for 120 days, and reduction to E-1.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RAMÍREZ, and RICHARDSON, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

RAMÍREZ, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas pursuant to a plea agreement, of one charge and two specifications (failure to go on divers occasions and absence without leave) in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886; [1] one charge and two specifications of wrongful use of controlled substances on divers occasions (cocaine and marijuana), in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; and one charge and one specification of disorderly conduct in violation of Article 134, UCMJ, 10 U.S.C. § 934.

The military judge sentenced Appellant to a bad-conduct discharge, reduction to the grade of E-1, and to be confined for 120 days. [2] Appellant was granted 104 days of pretrial confinement credit against his term of confinement. The plea agreement required the periods of confinement to run concurrently; it contained no other limitations on the sentence.

Appellant raises three issues [3] on appeal: (1) whether trial counsel improperly argued facts not in evidence, unit impact, and uncharged misconduct; (2) whether the convictions for wrongful use of cocaine and marijuana are void because they violate the protections of Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, dated 18 July 2018; and (3) whether the pleas to disorderly conduct and wrongful drug use were provident. After careful review of the record and consideration of Appellant's assignments of error, we find the part of issue (3) relating to wrongful drug use merits no further discussion nor warrants relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

We find no material prejudice to Appellant's substantial rights and affirm the findings and sentence. We do, however, find error in the entry of judgment which is addressed in our decree.

---

[1] Except where noted, references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The military judge adjudged the following sentence: for Specification 1 of Charge I, to be confined for seven days; for Specification 2 of Charge I, to be confined for 14 days; for Specification 1 of Charge II, to be confined for 120 days; for Specification 2 of Charge II, to be confined for 60 days; and for the Specification of Charge III, to be confined for 21 days. All sentences to confinement were ordered to run concurrently.

[3] Appellant raises issues (2) and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant, an Air Force Technical Sergeant, assigned to the 647th Civil Engineer Squadron (CES), Joint Base Pearl Harbor-Hickam, Hawaii, was receiving care at the Addictive Medicine Intensive Outpatient Program (AMIOP) located at Tripler Army Medical Center in Hawaii, when he left without authorization on the morning of 1 October 2019. Appellant left his personal cellphone in the AMIOP office, which was the only phone number at which his supervisory chain could reach him. Concerned for his physical welfare, Appellant's supervisors began to search for him by going to the address Appellant listed as his off-base residence on the unit's recall roster. That search was unsuccessful because Appellant listed an office building as his residence. Appellant's supervisors then returned to base and issued a "BOLO" (be on the lookout) for him through law enforcement. That day, Appellant did not report back to the medical center or contact anyone in his supervisory chain.

The next day Appellant called his squadron commander directly who instructed Appellant to either report to work or to the AMIOP. Appellant refused. The squadron commander then attempted to "negotiate" with Appellant in an effort to ascertain his whereabouts. Appellant would only meet at a non-military location and his commander acquiesced. They ultimately met at Queens Medical Center, in downtown Honolulu, and the squadron commander convinced Appellant to return to base. This conduct led to Appellant's conviction for absence without leave.

Appellant continued to have problems during the month of October. On several occasions throughout the month, he failed to go to his appointed place of duty. The following situation would repeat itself: Appellant would not report to work; his unit would have to contact him; he would ask for leave; the leave request would be denied; and he would show up at some point during the day. This conduct led to Appellant's conviction for failure to go.

While Appellant was supposed to be receiving treatment for his drug addiction, he was still in the throes of drug use and addiction.[4] Appellant used both marijuana and cocaine after work on 30 September 2019. After being absent without leave on 1 October 2019, he consented to a urinalysis the next day, the results of which were positive for both cocaine and marijuana. On 22 October 2019, Appellant provided another urine sample based on probable cause. This sample tested positive for marijuana. On 29 October 2019 Appellant again used cocaine and marijuana after work. On 1 November 2019, Appellant provided another urine sample, again based on probable cause, which

---

[4] Appellant told the military judge that he was using the drugs as a way to self-medicate for a shingles condition.

tested positive for both cocaine and marijuana. On 11 November 2019 Appellant again used cocaine and marijuana after work. On 12 November 2019 Appellant provided another urine sample which tested positive for both cocaine and marijuana. This conduct led to Appellant's convictions for wrongful use of controlled substances on divers occasions.

The events of 12 November 2019 also led to further criminal charges. Appellant did not report to work at 0700 hours as scheduled. Instead, he went to his squadron commander's office after the noon hour. Appellant arrived in civilian clothing looking for his commander. When he was informed that his commander was not present, Appellant threw his military identification, common access card (CAC), into his commander's office. At the same time, Appellant had an unidentifiable package wrapped in a brown paper bag. He dropped the package on a noncommissioned officer's (NCO) desk and stated, "Here, have one of these," which the NCO handled as a security threat[5] because Appellant appeared agitated.

Appellant left his commander's office for the 15th Wing headquarters building, but was stopped en route by another NCO. The NCO observed Appellant had blood-shot eyes, was acting irritated and aggressive, and was sweating profusely. At the headquarters building, Appellant repeatedly asked to speak with the 647th Air Base Group (ABG) Commander and was informed several times that he was in the wrong building. Appellant asked why a secure router switch was locked and if he could wipe his face with a folded table cloth.

Appellant left and made his way to the 647th ABG, which is co-located with the Joint Base Commander. When Appellant walked into that building, a Navy Seaman stopped him and asked for identification. Appellant said that he did not have any and grabbed a metal sign from the Seaman's desk. The Seaman felt "helpless" because she was unarmed at the time and was not trained to respond to the situation without a weapon. After grabbing the metal sign, Appellant then started picking up documents on her desk without permission and throwing them around her desk. At that point a Navy Master Chief arrived and confronted Appellant. Appellant told the Master Chief he was there to see the Joint Base Commander. The Master Chief explained that the commander was unavailable and asked why he needed to see him, Appellant replied, "I just do, what is it to you?" and he kept saying "I am quitting my job." Appellant was

---

[5] It was later discovered that the package contained an unused pregnancy test.

apprehended and placed into pretrial confinement until the time of his court-martial. These events gave rise to the specification of disorderly conduct.[6]

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

While recognizing the "particularly 'high hurdle'[7] of asserting plain error before a military judge," Appellant alleges that trial counsel stepped over the bounds of legally acceptable argument in five respects: (1) unit impact, (2) attributes of cocaine, (3) a letter of reprimand (LOR), (4) facts not in evidence, and (5) rehabilitation potential. The LOR was issued to Appellant for a series of offenses between 2 and 7 January 2019 while he was in pretrial confinement. Appellant's position is that while individually these errors might not establish prejudice, their collective weight raises a question of whether the military judge sentenced him based on the evidence alone.

### 1. Additional Background

Trial defense counsel raised no objections during trial counsel's sentencing argument. As to the issue of unit impact, trial counsel argued:

> 15 October, 21 October, 22 October he is absent from work for different periods of time. And Your Honor, these aren't just a forgivable 15 minutes. He is skipping half days in some instances. And to make matters worse, junior enlisted members of the unit, people under his supervision are seeing him come into work late. Their boss, skipping out on work. And what are they to think now. Are they to follow his lead? Or are they now going to lose respect for somebody put in authority over them?
>
> . . . .
>
> Your Honor, this isn't the case where a member is using drugs on the weekends and then returning to work fully sober. [Appellant] was unable to come into work. He was unable to function because of these drugs. His drug use had a mission impact, as shown by his absence.

With regards to the attributes of cocaine, trial counsel argued:

---

[6] The Government requested, and the special court-martial convening authority approved, an inquiry into Appellant's mental capacity under Rule for Courts-Martial 706. Results of the inquiry included that Appellant did not have a severe disease or defect at the time of the offenses, and was "presently able to understand the proceedings against him" and "cooperate intelligently with his defense."

[7] Citing *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000).

> Your Honor, consider his drug of choice, cocaine. Cocaine is a party drug. It is used for sense enhancement. It increases energy, it is not medicinal. Marijuana, if that was the only drug [Appellant] was using; perhaps his shingles would be mitigating. But he was testing positive for cocaine at several hundred times the DoD cutoff limit.

As to Appellant's LOR, which was admitted into evidence with no objection, trial counsel argued the contents of the LOR and how it should be put into context for purposes of the sentence he recommended. He argued:

> [T]he defense might try to explain these actions away as a result of a drug binge. That [Appellant] wasn't himself during this time. That might be reasonable, but for what happens months later. While the member is in pretrial confinement, which was disgraceful in another way. His actions in pretrial confinement relate directly to his very low potential for rehabilitation and the need for a strong sentence to deter further misconduct.

> I am referring to his actions and in [the] LOR, dated 15 January 2020; just over a month ago. [Appellant] had been in pretrial confinement for over two months at that point. Reportedly no access to drugs for two months at that point. Here is what the LOR was written for; insubordination during a command visit when he refused to verbally communicate to senior NCOs. Attempting to verbally counsel a senior NCO for chewing gum and [sic] front of him. Failure to comply with instructions from a senior NCO to remain clothed and not expose himself. Failure to comply with instructions not to enter restricted spaces, remove government property, or address staff and patients with inappropriate titles. Disregarding instructions from escort personnel to clothe himself and not emerge from his room[8] without clothing.

> Your Honor, it wasn't just the drugs that made [Appellant] miss work, disrespect his commander, and run around base causing havoc. As you can see from his continuous behavior in pretrial confinement, it was also the character of [Appellant] that led that to happen.

> That evidence is also evidence of his rehabilitative potential. Right now, [Appellant] cannot be trusted to wear his clothes or not expose himself. He doesn't respect his superiors; he calls

---

[8] The LOR does not specify what "room" Appellant was in.

them names. He doesn't come close to showing he has the potential to be useful or productive in society right now. His behavior in pretrial confinement also shows why he must remain in confinement.

Appellant argues that trial counsel made two arguments that were not supported by the evidence in the record. The first argument is with regards to the conversation between Appellant and his squadron commander when the commander instructed Appellant to either report to work or to the AMIOP and Appellant refused to do either, but did agree to meet at an off-base location. Appellant's argument centers around what Appellant does *not* say:

> You heard [Appellant's squadron commander] say, he wasn't sure if [Appellant] was still going to be with us at that time. The next morning [Appellant] calls his commander directly. *He doesn't apologize for leaving treatment, he doesn't say he will never do it again.* No, he has the audacity to broker and negotiate the terms under which he would meet with his commander to discuss coming back to work. That is disrespectful, Your Honor.

(Emphasis added.)

The second argument is with regards to the Prosecution relying on the *Care*[9] inquiry during sentencing argument without asking to do so on the record. Trial counsel argued:

> In the *Care* inquiry, [Appellant] attributed his drug use to pain management with shingles. Shingles may be very painful, no doubt. But the Air Force, we have free healthcare. Your Honor, obtaining treatment isn't hard. You make an appointment, show symptoms, receive prescribed medicine to treat those symptoms. [Appellant] didn't take the most obvious practical and legal step to decrease his pain. Drive to the 15th Medical Group and make an appointment.

With regard to evidence of rehabilitation potential, Appellant contends trial counsel "made errors in admitting rehabilitative potential evidence, and then argued the [rehabilitative] potential improperly." During the Government's sentencing case, Appellant's squadron commander testified that he had formed an opinion as to Appellant's rehabilitative potential, which was "[r]ight now, very low." Prior to eliciting the squadron commander's opinion as to rehabilitative potential, trial counsel asked whether there were any issues while

---

[9] Appellant refers to *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969) as the *Care* inquiry which is the factual basis or the providence inquiry for his plea of guilt.

Appellant was in pretrial confinement. The squadron commander stated, "I think he has had some issues there. I remember issuing him an LOR while he was in pretrial confinement. Just for disrespecting our First Sergeant and one of our Senior NCOs while we were doing command visits." Appellant specifically takes issue with trial counsel referencing the underlying conduct from the LOR when arguing "[Appellant's] behavior in pretrial confinement also shows why he must remain in confinement," and "[a]s you can see from his continuous behavior in pretrial confinement, it was also the character of [Appellant] that led that to happen."

### 2. Law

The issue of "improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). As trial defense counsel did not object to the complained-of comments, we review the issue for plain error. *Id.* (citation omitted). To do so, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.*

"As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). Because of this, "we need not address whether there was error or whether any error was plain or obvious, [when] even if these two prongs were satisfied, [an appellant] has failed to establish any material prejudice to his substantial rights." *Id.* (citation omitted). In order to establish prejudice as it relates to allegations of improper argument, "we balance the severity of the improper argument, any measures by the military judge to cure the improper argument, and the evidence supporting the sentence." *Marsh*, 70 M.J. at 107 (citation omitted). We do this to determine whether the "trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone." *Id.* (alteration in original) (internal quotation marks and citation omitted).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Id.* (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id.* (citations omitted).

### 3. Analysis

We find no plain or obvious error in the Prosecution's arguments concerning unit impact and rehabilitation potential. The law is clear that "counsel may argue evidence before the court and reasonable inferences from that evidence."

*United States v. Spears*, 32 M.J. 934, 935 (A.F.C.M.R. 1991) (internal quotation marks and citations omitted). A reasonable sentencing authority could infer from the evidence that (1) junior Airmen in Appellant's unit, including those he supervised, would have noticed Appellant's absences from work; (2) the reason Appellant missed work was related to his indulgence in drugs, e.g., 12 November 2019; and (3) Appellant's lack of apology to his commander or promise to his commander not to reoffend indicates low rehabilitative potential.

We also find it was not plain error for the Prosecution to argue to the military judge that cocaine is "a party drug," used for "sense enhancement," and it "increases energy." We note that it is proper for a trial counsel to comment on matters of common knowledge within the community. *United States v. Barrazamartinez*, 58 M.J. 173, 175 (C.A.A.F. 2003).

We find no plain or obvious error in the argument relating to the LOR. Although LORs are tools to improve and correct military members who depart from standards of performance or conduct and they are to perform a legitimate corrective, as opposed to a punitive, purpose, trial counsel may still argue that they show a lack of rehabilitative potential. *United States v. Raschke*,[10] No. ACM S32364, 2017 CCA LEXIS 218, at *4 (A.F. Ct. Crim. App. 24 Mar. 2017) (unpub. op.).

As to the consideration of the *Care* inquiry, however, during its pre-sentencing case, the Prosecution should have requested the military judge consider the *Care* inquiry before arguing facts from it. *See United States v. Holt*, 27 M.J. 57, 60 (C.M.A. 1988) (upon request, the military judge should allow the accused's sworn testimony from the providence inquiry as evidence in aggravation in sentencing proceedings if it directly relates to an offense to which he pleaded guilty). While it was error not to make such a request, we find no prejudice. Trial defense counsel had the opportunity to object to the military judge's consideration of the *Care* inquiry if it contained matters not proper for consideration in sentencing; Appellant identifies no such matters. Trial counsel referenced only the part of the *Care* inquiry in which Appellant talked about shingles. However, that Appellant used drugs to relieve symptoms of shingles was in both the stipulation of fact and Appellant's unsworn statement. More telling, trial defense counsel also brought up shingles to the military judge, arguing that "[Appellant] was just trying to deal with shingles. He knew he shouldn't do drugs, tried to get help for it and it wasn't helping."

---

[10] Just as we did in *Raschke*, we note that this might be a closer call if it were a members-sentencing case instead of a judge-alone sentencing case as military judges are presumed to know and follow the law. Unpub. op. at *7 (citation omitted).

Even in the aggregate, Appellant's claim of material prejudice is unconvincing. He does not exactly claim that, but for these errors, a certain punishment may not have been adjudged. Instead, the most that Appellant can argue is that the errors' "collective weight raises a question of whether the military judge sentenced [Appellant] based on the evidence alone." *Marsh*, 70 M.J. at 107. However, we are not convinced.

Appellant argues the sentence was "devastating as [he] was less than four years from retirement." While we do not doubt the effects of the sentence, we are unconvinced it was influenced by improper argument instead of the evidence. We presume the military judge considered only facts in evidence. Those facts indicate Appellant repeatedly acted with defiance and disregard for the law and the consequences of his actions. While Appellant was sentenced to a bad-conduct discharge, his sentence included only 120 days of confinement and he was only subject to automatic forfeitures for his period of confinement as no forfeiture of pay was adjudged.

In the absence of evidence of material prejudice, Appellant's plain error claims must fail.

## B. AFI 44-121, ADAPT Program

Appellant alleges that the protections against disciplinary actions for an Airman who has self-reported were violated through the use of his self-report against him. Specifically, Appellant claims that the Government seeking a consent search after his absence without leave on 1 October 2019 "yielded the beginning of dire consequences for [him]." He also mentions that the consent search documentation is not in the record.

### 1. Additional Background

In August 2019, Appellant was diagnosed with shingles. A month later, Appellant self-referred to ADAPT.[11] Since he was "struggling with discontinuing use" of controlled substances, he was referred to the AMIOP. According to his declaration, when he "self-identified to ADAPT, [he] believed, based on the description from staff, that the relevant AFI offered 100% confidentiality and zero negative career impact." He states that he "sought help from ADAPT during a tough time in [his] life, and instead [he] found humiliation." His declaration also acknowledges that the ADAPT staff told him not to drink or use controlled substances. However, he also claims that on 5–6 September 2019, he attended "Team Treatment Meetings for ADAPT" where he was told that it

---

[11] In support of this assignment of error, Appellant submitted a declaration detailing the date of his self-referral to ADAPT, dates of treatment, and perceptions of the program. We accept and consider Appellant's declaration in accordance with *United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020).

would be "ok" if he continued use "to prevent shock." After failing ADAPT, he was sent to the AMIOP program at Tripler Army Medical Center, but absented himself without leave.

Ultimately Appellant pleaded guilty for his conduct. As part of the plea agreement, Appellant offered to waive all waivable motions. The military judge went over the plea agreement with Appellant and trial defense counsel, and specifically discussed that provision. The military judge first asked trial defense counsel what motions would have been filed but for the provision in the plea agreement. Trial defense counsel noted a motion to dismiss for speedy trial violations; "a motion to suppress both for improper search authorization, lack of knowledge to consent as to the voluntary submissions for the urinalysis;" "a motion to suppress the urinalysis obtained in violation of the AFI governing ADAPT;" and a discovery motion. The military judge then explained to Appellant that certain motions are waived if not made prior entering a plea while some motions can never be given up. The military judge specifically informed Appellant that "some of the evidence, in particular that regarding some of the drug testing[,] could have been suppressed and therefore not available for the [G]overnment to use in this case." Appellant said that he understood that this term of the plea agreement means he was giving up the right to make any motion which is waived upon the plea and that it would preclude the military judge and this court from determining the merits of those motions. Appellant also said that his trial defense counsel explained those consequences of the plea agreement. Finally, Appellant said that he freely and voluntarily agreed to this term of the plea agreement in order to receive what he believed to be a beneficial plea agreement.

**2. Law**

Our superior court has explained that "waiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotation marks and citation omitted). A "waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (citation omitted). When "an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *Gladue*, 67 M.J. at 313 (citation omitted). However, under our Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), authority, we may pierce an appellant's waiver in order to correct a legal error. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (referencing Article 66(c), UCMJ, 10 U.S.C. § 866(c) (*Manual for Courts-Martial, United States* (2016 ed.)), which is substantially similar to Article 66(d)(1), UCMJ.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *Id.* at 314 (citation omitted). "In the absence of an explicit prohibition, a party may knowingly

and voluntarily waive such a nonconstitutional right in a [plea agreement]." *Id.* (citations omitted).

### 3. Analysis

We do not question that Appellant went to ADAPT to seek help for drug addiction. We do not reach the issue, however, as to whether he relied on the program's confidentiality protections to his detriment and has a viable claim.

Appellant knowingly and voluntarily waived the right to raise nonconstitutional claims founded on AFI 44-121 as well as his contemplated motions to suppress both for alleged improper search authorization and lack of knowledge to consent as to the voluntary submissions for the urinalysis. Because Appellant intentionally waived a known right at trial, it is extinguished and may not be raised on appeal. Under the circumstances, we decline to pierce Appellant's waiver. *See Hardy*, 77 M.J. at 442–43.

## C. Providence of Plea of Guilty to Disorderly Conduct

Appellant claims the military judge's inquiry into the providence of his plea of guilty did not establish the two elements of the offense charged in the disorderly conduct specification. Specifically, Appellant argues the military judge failed to adequately address (1) whether the conduct would have endangered public morals or outraged public decency and (2) whether the conduct was prejudicial to good order and discipline. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 98.c.

### 1. Additional Background

The military judge went over the following facts with Appellant during the *Care* inquiry: that Appellant first went to the office of his squadron commander; that Appellant threw his CAC into the commander's office; that Appellant left a package on the NCO's desk; that security forces had to be called to respond to the package that Appellant left behind because it was a suspicious package; that Appellant left his commander's office and went to attempt to speak to the 15th Wing Commander (15 WG/CC) but went to the wrong place; that he then went to another building; that while at that building he grabbed a metal sign from a Seaman's desk as well as some of her documents without permission; that he was in an agitated state; that he was under the influence of drugs at the time; and that in those locations or in at least one of those locations, his actions caused a disturbance for those who worked there.

Additionally, Appellant explained what he should have done instead:

> Well, I wasn't patient. I should have waited at my Commander's office first. Actually, I probably should have just talked to my supervisor about it first and stopped right there. But I didn't do

that. Even though I didn't raise my voice or yell at people. I was being pretty stern about what I thought I needed at the time.

During the *Care* inquiry, Appellant answered "yes" to the military judge's question of whether he would "agree that [Appellant's] actions in causing a disturbance in these different Commander's offices could cause an injury to good order and discipline in the military?" Appellant said he "was not being very nice," he was trying "aggressively" to talk to the commander, and he now "would try to apologize to the people that [he] was disturbing." The stipulation of fact, reviewed with the military judge, offered further information concerning this inquiry. By signing the stipulation of fact, Appellant acknowledged that this conduct was "disorderly by affecting the peace and quiet of military members of the 674 CES, 15 WG/CC, 647 ABG, and Joint Base Commander's staff [and] . . . [his] conduct caused a disturbance of a contentious or turbulent character."

**2. Law**

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted). "A military judge abuses his discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citation omitted).

"The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). An appellant bears the "burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)).

"[W]here a guilty plea is first attacked on appeal, we must construe the evidence in a light most favorable to the Government." *United States v. Hubbard*, 28 M.J. 203, 209 (C.M.A. 1989) (Cox, J., concurring).

Rule for Courts-Martial 910(e) explains that the "military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." "Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996) (citation omitted). When entering a guilty plea, the accused should understand the law in relation to the facts. *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

The record of trial must show that the military trial judge questioned the accused about what he did or did not do and what he intended. *Id.* at 253. This

is to make clear to the military judge whether the accused's acts or omissions constitute the offense to which he is pleading guilty. *Id.* "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation marks and citation omitted).

"This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (internal quotation marks and citation omitted).

In reviewing the providence of an appellant's guilty pleas, "we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007)). Additionally, "we must accept all of the facts in the parties' stipulation [at the court-martial] as true." *United States v. Castro*, 81 M.J. 209, 211 (C.A.A.F. 2021) (citation omitted).

As charged in this case, the two elements of this offense are (1) that Appellant was disorderly at or near Joint Base Pearl Harbor-Hickam, Hawaii, and (2) that, under the circumstances, his conduct was to the prejudice of good order and discipline in the armed forces. *See MCM*, pt. IV, ¶ 98.b. "Disorderly conduct is conduct of such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby. It includes conduct that endangers public morals or outrages public decency and any disturbance of a contentious or turbulent character." *MCM*, pt. IV, ¶ 98.c.(2).

### 3. Analysis

The military judge satisfied his obligations by explaining the elements of the disorderly conduct specification and questioning Appellant about both of the elements. Appellant stated that he understood the elements of the offense, agreed that his acts had satisfied all the elements, and described what he did. Appellant did not set up matter inconsistent with the plea which would have required the military judge to either resolve the apparent inconsistency or reject the plea.

Not all prohibited disorderly conduct must "endanger[ ] public morals or outrage[ ] public decency" as Appellant suggests. Appellant's conduct in this case affected the peace and quiet of persons who witnessed it and created disturbances of a turbulent nature. The military judge did not err in finding Appellant admitted facts to support this element of the offense.

As it relates to whether Appellant's conduct was to the prejudice of good order and discipline in the armed forces, Appellant cites *United States v. Jordan* for the proposition that a simple "yes, sir" when asked if the conduct was prejudicial is a "mere conclusion of law recited by an accused" that will not "provide a factual basis for a guilty plea." 57 M.J. 236, 239 (C.A.A.F. 2002) (citation omitted). However, that is not what occurred here. The military judge did not simply ask Appellant if his conduct was prejudicial to good order and discipline. The military judge was specific as to the conduct when he asked whether "Appellant's actions in causing a disturbance in these different Commander's offices could cause an injury to good order and discipline in the military." Additionally, unlike in *Jordan*, a stipulation of fact was admitted and cross-referenced during the military judge's colloquy with Appellant, and Appellant responded "to questions of fact and not just conclusions of law." *See id.* at 239 (citation omitted). Appellant has not demonstrated a substantial basis in law and fact for questioning his plea. Therefore, we find that the military judge did not abuse his discretion when finding Appellant's plea to be provident.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.[12]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[12] The day before Appellant's court-martial, and without objection, trial counsel made changes to the charge sheet, adding "on divers occasions," "between," and "and on or about 22 October 2019" to Specification 2 of Charge I. While the statement of trial results is correct, the entry of judgment does not reflect the specification as amended. We direct that a military judge, through the Chief Trial Judge, Air Force Trial Judiciary, correct the entry of judgment before completion of the final order under R.C.M. 1209(b) and Air Force Instruction 51-201, *Administration of Military Justice*, Section 14J (18 Jan. 2019).