# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Master Sergeant DUANE M. COLE
## United States Air Force

## ACM 38606

## 12 November 2015

Sentence adjudged 17 January 2014 by GCM convened at Ellsworth Air Force Base, South Dakota. Military Judge: L. Martin Powell.

Approved Sentence: Confinement for 1 year, reduction to E-4, and a reprimand.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Senior Judge:

Appellant was convicted by a panel of officer members, pursuant to mixed pleas, of a violation of a lawful general regulation by wrongfully storing sexually explicit materials on a government computer, assault consummated by a battery, and conduct that was service discrediting and prejudicial to good order and discipline by wrongfully posing for a sexually explicit visual recording while in uniform, in violation of Articles

92, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 928, 934.[1]  Appellant was acquitted of a charge of sexual assault.  The court sentenced him to one year of confinement, forfeiture of $2,427 pay per month for one year, reduction to the grade of E-4, and a reprimand.  The sentence, except for the forfeitures, was approved on 16 April 2014, with automatic forfeitures waived for the benefit of Appellant's daughter.

Appellant argues that the military judge erred by admitting a portion of a petition for a protective order, that the trial counsel made improper argument during sentencing, that the victim impact statement provided to the convening authority contained impermissible matters, and that the Government's violation of the 30-day post trial processing standard for forwarding the record of trial for appellate review warrants relief.  Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

The Government began investigating Appellant after a broader inspection of government computers revealed sexually explicit materials on his government account.  The inspection of Appellant's computer account disclosed hundreds of sexually explicit images and several videos, all of which were prohibited by regulation from being stored on an Air Force computer system.  A few of the depictions showed a woman performing oral sex on Appellant while he was in uniform.  In the course of the investigation, agents spoke to Appellant's former wife, Ms. Cole,[2] who described, among other things, a 2010 incident where Appellant pushed her down during an argument.

At trial, Ms. Cole testified about the charged assault.  The couple had a tumultuous past, having been married from 1992 to 1997, then reconciled and remarried in 2004 before divorcing a second time in 2012.  In September 2010, as the second divorce began to appear likely, she and Appellant had an argument about child custody.  She testified that during the argument, Appellant pushed her in the chest, causing her to fall over a baby gate onto a treadmill.  On cross-examination, trial defense counsel elicited testimony about a protective order she sought shortly after the incident, in an effort to rebut testimony that she was afraid of Appellant prior to the assault, specifically as it pertained to the unrelated charge of sexual assault.

A major theme of the defense case was the suggestion that Ms. Cole was deliberately misleading.  Trial defense counsel elicited testimony about a number of complaints Ms. Cole had raised that he characterized as "outrageous claims."  Trial

---

[1] Appellant pled guilty to the violation of the general regulation and to posing for explicit recordings in uniform and not guilty to the assault consummated by a battery.

[2] In order to respect her privacy, we refer to Appellant's former wife, who still used her married name at the time of trial, only as Ms. Cole.

defense counsel referred back to those portions of her testimony during argument and implied that they were malicious. He made sweeping arguments about her reasons for making such statements:

> Maybe she was upset about the fact that she perceived this infidelity going on over a long course of her relationship with Sergeant Cole. It's clear based off of these allegations, these wild allegations that she's made against Sergeant Cole, that there's a certain level of vindictiveness there. Another thing to consider is, maybe, we just don't know what her rationale is. But one thing is clear, based off of all the things that she's said about Sergeant Cole, there's something that's off there. There's something that's unstable. Maybe we don't understand it. The government certainly didn't provide you an explanation for it. But, at the end of the day, we can't get into her mind and explain all these inconsistencies away for the government.

During deliberations, the members sought additional evidence about the assault. Their interest focused on possible contemporaneous reports. After being informed that there were no police reports or contemporaneous witness statements they would be allowed to consider, the members asked to recall Ms. Cole.[3] During the questioning by the members, one member asked Ms. Cole, "You stated the protective order was because you were afraid for yourself and your daughters, but why did you not mention the 2010 treadmill incident when petitioning for [the 2010 or 2013] protective order?" Ms. Cole responded, "I don't know." Factually, the member's question was based on a faulty premise because Ms. Cole did in fact mention the treadmill incident in the 2010 application for the protective order. Trial counsel, noting the discrepancy, clarified the misunderstanding by refreshing Ms. Cole's recollection with the protective order, which included both the court order itself and the underlying petition.

With the protective order in front of the witness, the same member turned to the content of that application. He asked, "Ms. Cole, can we hear specifically what you reported about the treadmill incident in the protective order?" Although the question clearly called for hearsay, neither party objected to the question. Ms. Cole testified consistent with her earlier account of the assault but in somewhat less detail. The member then sought to have her read exactly what was on the document. The military judge excused the members and allowed argument from the parties about the question.

---

[3] The military judge in this case used the common practice of requiring all member questions to be submitted in writing and screened for potential objection by both parties before asking the question himself on behalf of the member.

Trial defense counsel objected, arguing that it called for hearsay. The discussion turned to the definition of hearsay as it relates to prior consistent statements under Mil. R. Evid. 801(d)(1)(b). After some deliberation, including a recess for the parties to consult case law on the topic, the military judge ruled:

> the evidence has raised recent motives—when I say "recent" I mean since 2010—evidence has been presented that Ms. Cole had recent motives to lie, to fabricate her testimony here in court. That certainly was the implication from the evidence presented thus far. The court finds that the statement contained in the 2010 protective order is consistent with the testimony here in court. So, I will allow the limited portion of the protective order that addresses essentially what the witness has already testified to here on the stand. I didn't note that there was any difference in the 2010 protective order from what she testified to in response to [the member's] question. So, I will allow that portion of the 2010 protective order to be published to the members.

Consistent with that ruling, the Government prepared a redacted version of the protective order which was provided to the members. The members, who had difficulty reading the exhibit, sought to have Ms. Cole read the exhibit aloud. The military judge allowed her to read directly from the exhibit as best she could.

After one more question as to the date of the protective order, the members took a 90-minute lunch break. When they returned, they deliberated for less than 18 minutes before returning their findings of not guilty as to sexual assault, but guilty of, among other offenses, pushing Ms. Cole down onto the treadmill.

Additional facts necessary to resolve the assigned errors are included below.

*Admission of Redacted Application for Protective Order*

Appellant argues that the military judge erred by admitting the redacted contents of the 2010 petition for a protective order as a prior consistent statement by Ms. Cole. We review a military judge's ruling on the admissibility of evidence for abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)) (internal quotation marks omitted).

While hearsay evidence is generally not admissible, a prior consistent statement of a witness may fall outside the definition of hearsay in some circumstances. Mil. R. Evid. 801(d)(1)(B) provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement, and the statement "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying."

The Analysis section of the *Manual* explains:

> [o]n its face, the Rule does not require that the consistent statement offered have been made prior to the time the improper influence or motive arose or prior to the alleged recent fabrication. Notwithstanding this, the Supreme Court has read such a requirement into the rule. *Tome v. United States*, 513 U.S. 150 (1995); *see also United States v. Allison*, 49 M.J. 54 (C.A.A.F. 1998).

*Manual for Courts-Martial, United States*, app. 22 at A22-61 (2012 ed., as supplemented by Exec. Order No. 13643, 78 Fed. Reg. 29559 (May 15, 2013)).

The courts have articulated two reasons for the exception codified in Rule 801(d)(1)(B). The first is that a statement made before a motive to fabricate arose is by definition not subject to that influence and may therefore be used both in support of the testimony at trial as well as substantive evidence. *See Tome*, 513 U.S. at 158. The second justification for such a broad rule is that "[i]n a sense, admissibility of such declarations is a matter of choice by the party opposed to the witness, who may open the door to the use of such statements by engaging in a particular kind of impeachment, or leave the door shut by refraining." *United States v. Morgan*, 31 M.J. 43, 46 (C.M.A. 1990) (quoting D. LOUISELL AND C. MUELLER, FEDERAL EVIDENCE § 420 at 187 (1980)) (internal quotation marks omitted).

During cross-examination, trial defense counsel sought to undermine Ms. Cole's specific testimony about the assault in two primary ways. The first was to undermine her testimony with inconsistent details she gave in a sworn statement to security forces in December 2012 and the second was to challenge a photo of bruises admitted during her direct examination.

Trial defense counsel first focused on three details from Ms. Cole's 2012 sworn statement. The first concerned her testimony on direct examination about an

incriminating remark by Appellant just prior to the assault.[4] Counsel pointed out that she never mentioned the incriminating remark in her sworn statement in 2012. He also brought out allegations she made apparently for the first time in the 2012 statement that in the immediate aftermath of the assault, Appellant kicked her dog when the dog tried to protect her from further harm. Trial defense counsel later asked Ms. Cole's daughter, the only other witness who testified about the assault, if she remembered Appellant kicking the dog. The daughter testified she did not. The final detail concerned who called the police after the assault. Trial defense counsel pointed out that the 2012 statement says Ms. Cole called police herself, when other accounts she gave indicated that her daughter called the police.

The second approach to undermining Ms. Cole's account of the assault concerned the authenticity of a photo of bruises Ms. Cole testified about on direct examination. The Government had admitted a photo showing two dark purple bruises on Ms. Cole's buttocks. Ms. Cole had testified that the photo showed what the bruises looked like "a few hours" after the assault. Trial defense counsel pointed out that immediately after the assault she told police that she did not know if she had any bruises, implying the statement to police was inconsistent with having the dark purple bruises shown in the photo a mere few hours later. He asked her, "In your experience, do you have bruises like this that show up two hours after something happens?" to which she responded, "No."

This multi-faceted approach to undermining Ms. Cole's testimony makes it difficult to identify a single charge or implication of recent fabrication or improper motive that might open the door to a prior consistent statement. "Where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut." *Allison*, 49 M.J. at 57. The military judge found "evidence ha[d] been presented that Ms. Cole had recent motives to lie, to fabricate her testimony . . . in court," but he did not enumerate any particular express or implied charge. Trial defense counsel laid out at least one theory in opening statements: "[I]n 2010, divorce was filed again, and that divorce was completed in December 2012. It was a bitter divorce, and you'll hear that. There was a hotly contested custody dispute. And that is when the accusations started." Trial defense counsel returned to the custody issue again in his cross-examination of Ms. Cole, asking whether custody of the youngest daughter was a "big issue" in the second divorce. That theory continued into argument, where defense counsel argued, "As you've heard, there's been a lot of back-and-forth over this heated custody battle. You also have heard, as part of that, these escalating allegations by [Ms.] Cole that have no basis in fact whatsoever; a

---

[4] Ms. Cole had testified about an exchange on the stairs just prior to the assault where Appellant rushed past her causing her to push herself against the wall. Appellant asked her, "What, are you scared?" When she responded that she was, according to her, Appellant said, "Good."

clear intent on her part to throw dirt on her ex-husband with nothing to support it." While trial defense counsel made that argument in the context of the sexual assault charges, he later incorporated it in the context of the assault charge, saying "the issue here, members, is strictly whether you believe the government's primary witness, whether you believe [Ms.] Cole, just as with the sexual assault cases [sic]." Accordingly, the record supports the military judge's finding that there was at least one recent motive to fabricate charged by Appellant.

The final element of our analysis is to evaluate whether the prior consistent statement was offered to rebut that recent charge or implication. In this case, the evidence was elicited directly by the members, so the record does not contain an explicit proffer of how the prior statement would be used. However, we can still evaluate the extent to which the statement in the protective order accorded with that portion of Ms. Cole's testimony at trial that dealt with a subject that was challenged by the defense. We concur with the military judge that her testimony at trial was generally consistent with the statement in the protective order. We also find that the defense implied Ms. Cole had a motive to lie about the particular subject of the assault by challenging her in-ourt testimony about the assault with details contained in a sworn statement provided during the custody dispute.

We find that the military judge did not abuse his discretion by allowing the publication of the prior consistent statement under Mil. R. Evid. 801(d)(1)(B).

*Improper Argument*

Appellant also claims that the trial counsel engaged in improper argument during the sentencing phase of the trial. Appellant argues trial counsel's characterization of the United States as a victim of the offenses, including a statement that the members had a duty to examine the evidence and "give the United States a just sentence," was improper. He also argues that trial counsel's repeated references to adulterous conduct were improper. Appellant also cites as improper trial counsel's argument based on facts not in evidence when trial counsel alleged that Appellant was sending nude photographs of himself to others. Finally, he argues that trial counsel mischaracterized statements in the providence inquiry which were played for the members.

Improper argument involves a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). In this case, trial defense counsel objected to some of the arguments they now cite as improper but failed to object to others. The military judge sustained each objection. If trial defense counsel failed to object to the argument at trial, we review for plain error. *Id.*; *United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009). To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Marsh*, 70 M.J. at 104 (quoting *United States v. Erickson*, 65 M.J.

221, 223 (C.A.A.F. 2007)) (internal quotation marks omitted). Appellant also includes in his assignment of error argument to which the military judge sustained an objection. Appellant did not, however, seek any additional curative instruction prior to the military judge's procedural instructions on sentencing. Accordingly, we apply plain error review to those aspects of trial counsel's argument as well. *See United States v. Jenkins*, 54 M.J. 12, 19 (C.A.A.F. 2000); *United States v. Stargell*, 49 M.J. 92, 94 (C.A.A.F. 1998).

Trial counsel is expected to zealously argue for an appropriate sentence, so long as the argument is fair and reasonably based on the evidence. *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994). Error occurs when counsel fail to limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citing *United States v. Nelson*, 1 M.J. 235, 239 (C.M.A. 1975)). Even within the context of the record, it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *Marsh*, 70 M.J. at 102 (alteration in original) (quoting *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)) (internal quotation marks omitted); *see also* Rule for Courts-Martial (R.C.M.) 919(b), Discussion.

Assuming arguendo there was plain error, Appellant still has the burden of demonstrating a material prejudice to his substantial rights. Assessing prejudice "involves a balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005), *cited in United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014). In making this assessment, we consider whether "trial counsel's comments, taken as a whole, 'were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone.'" *Frey*, 73 M.J. at 249 (alteration in the original) (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

Of all of the claims of improper argument, we consider only one to be of any significant severity, the repeated allusions to the adulterous nature of Appellant's relationships with the women depicted in the sexually explicit images. These comments, however, were effectively addressed by the military judge, who instructed the panel,

> [T]rial counsel has referred several times to individuals not the accused's wife. The accused is not charged with any sexual offense with a person not his wife, so I direct you that that is not proper aggravation evidence in this case. I direct you to ignore references to a person not his wife.

When the trial counsel later listed the numerous names under which Appellant had stored explicit photos, the military judge reiterated this previous instruction: "I will remind you

that the accused is not to be sentenced for any implied infidelity. He's not charged with that. He's to be sentenced for the offenses of which he has been convicted."

Trial counsel's other asserted missteps were not substantial in the context of his entire argument. Although he referred to the United States as a victim, he did not do so in a manner that would inflame the passions of the members. Similarly, trial counsel's sole reference to facts not in evidence was immediately and properly subject to a defense objection, which the judge sustained. While we find unobjectionable trial counsel's suggestion that the members go beyond Appellant's bare-bones description of his conduct in deriving a just sentence, we agree that trial counsel's assertion "[t]he biggest impact to the Air Force is him" failed to rationally relate any of the evidence to what might be an appropriate sentence. However, that unwarranted reference to Appellant's identity as aggravating in itself was limited to that single instance. Finally, we are not persuaded that a reasonable member would take trial counsel's assertion that Appellant's "good face," i.e., his sentencing exhibits, did not matter to be a suggestion that they should not consider them at all. We conclude that a reasonable member would take such language as trial counsel's suggestion that they should give them little weight, a permissible form of argument.

Even if trial counsel's comments were improper, we are confident Appellant was sentenced on the basis of the evidence alone. The weight of the evidence in this case "amply supports the sentence imposed by the panel." *Halpin*, 71 M.J. at 480. Appellant pled guilty to two of the three charges of which he was convicted, and the members thoroughly tested the evidence with regard to the assault through their engagement and direct questioning during the findings phase. Furthermore, the members' sentence was directly responsive to Appellant's own unsworn statement, in which he said "[he] would gladly spend as much time in confinement as [the members thought] appropriate if it [meant] avoiding a punitive discharge." Although the year of confinement is substantial, the sentence did not include a punitive discharge. Accordingly, we find no prejudice to Appellant's rights in this regard.

*Victim Impact Statement*

Appellant claims, for the first time on appeal, that the content of the victim impact statement constituted error in the staff judge advocate's recommendation. According to Appellant, the statement's content was impermissible under the applicable Air Force Instruction. Whether post-trial processing was properly completed is a question of law we review de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). R.C.M. 1106(f)(6) provides: "Failure of counsel for the accused to comment on any matter in the recommendation or matters attached to the recommendation in a timely manner shall

waive later claim of error with regard to such matter in the absence of plain error."[5] Accordingly, we apply the test for plain error set out above.

Assuming without deciding that the content of the victim impact statement rendered the staff judge advocate's advice plainly erroneous, Appellant was not materially prejudiced. Pursuant to R.C.M. 1107(b)(3)(B)(iii), the convening authority may consider "[s]uch other matters as the convening authority deems appropriate. However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." Appellant was given a copy of the victim impact statement and chose not to object to the statement or rebut it. The convening authority had discretion to consider it independent of the regulatory provisions concerning victim impact statements. Accordingly, Appellant was not materially prejudiced by any alleged regulatory defect in handling the statement.

*Post-trial Delay*

Finally, Appellant asserts that this court should grant him meaningful relief in light of the 48 days that elapsed between the convening authority's action and docketing with this court. Under *United States v. Moreno*, courts apply a presumption of unreasonable delay "where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Appellant does not assert any prejudice, but argues that the court should nonetheless grant relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002).

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Bischoff*, 74 M.J. 664, 672 (A.F. Ct. Crim. App. 2015). *See also United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015) (articulating factors specifically tailored to answer the question of whether *Tardiff* relief is appropriate). The factors include the length and reasons for the delay, the length and complexity of the record, the offenses involved, and evidence of bad faith or gross negligence in the post-trial process. Appellant has not asserted any additional factors that merit consideration in this case. The length of the delay only exceeded the standard by 18 days. The Government, however, offers no reason for the delay. The record was substantial, comprised of a 929-page transcript and spanning 8 volumes. The offenses, one of which entailed physical injury to a victim, were not insignificant. There was no evidence of bad faith or gross negligence. On the contrary, the processing time from trial to action, even with a proceeding in revision, was only 89 days. The total processing

---

[5] Despite the use of the term waiver in Rule for Courts-Martial 1106(f)(6), failure to object legally constitutes forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

time in this case from trial to docketing was only 137 days. In light of that overall timely handling, we find the delay from action to docketing, although presumptively unreasonable, to be reasonable in this case and conclude no *Tardif* relief is warranted.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED.**

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court